**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**LORENZO ALLEN THOMAS,**

        **Plaintiff,**

                                  **Civil Action 2:25-cv-570**
      **v.**                         **District Judge Algenon L Marbley**
                                  **Magistrate Judge Kimberly A. Jolson**

**PICKAWAY COUNTY, et al.,**

        **Defendants.**

**<u>ORDER AND REPORT AND RECOMMENDATION</u>**

Plaintiff's Motion to Proceed *in forma pauperis* is before the Court.  The Court **GRANTS** the Motion (Doc. 6) and **DENIES as moot** Plaintiff's previous motions seeking the same (Docs. 1, 4).  After conducting an initial screen of Plaintiff's Complaint (Doc. 1-1) under 28 U.S.C. § 1915(e), the Undersigned **RECOMMENDS** that the Court **DISMISS** Plaintiff's claims except for his substantive due process claim based on familial association against Defendant Holly.  The Court additionally **DENIES without prejudice** Plaintiff's Motion to Appoint Counsel.  (Doc. 2).

## I.     BACKGROUND

Plaintiff, an Ohio resident proceeding *pro se*, brings this action against Pickaway County, Ohio ("the County"); Pickaway County Department of Jobs & Family Services – Children Services Division; Pickaway County Department of Jobs & Family Services ("PJFS") employees Elisabeth Hedrick, Mikki Vinkovich, and Amy Holly; Pickaway PJFS's Director Nicholas Tatman; and an unspecified number of John and Jane Does.  (Doc. 6-1 at ¶¶ 6–11).

As alleged, Plaintiff filed a custody petition relating to two children in the Pickaway County Court of Common Pleas Juvenile Court in September 2023.  (*Id.* at ¶ 12).  The court granted him a favorable ruling and issued an order "establishing parental custody [and] visitation rights." (*Id.*).  To enforce the order, Plaintiff contacted PJFS's Director Tatman.  (*Id.*).  Tatman said he

needed time to review the order but did not call Plaintiff back.  (*Id.* at ¶¶ 12–13).  Instead, social worker Amy Holly and an unnamed individual came to Plaintiff's house and stated allegations were made concerning the safety and welfare of Plaintiff's children.  (*Id.*).  Plaintiff's girlfriend, Ms. Martin, refused them entry, and they left.  (*Id.*).  Holly and Plaintiff then spoke on the phone. (*Id.* at ¶ 14).  Holly said she needed to drug test him and conduct a home study prior to any visits with the children per the court's order.  (*Id.*).  Because Plaintiff did not believe those were Holly's "true intentions," he again denied her entry to his home.  (*Id.* at ¶¶ 14–15).

Sometime later, Holly returned to Plaintiff's home "with law enforcement and left a copy of an order from the family court immediately suspending [Plaintiff's] rights to access his children; based on a referral made by [PJFS]."  (*Id.* at ¶ 16).  The court order instructed a child protective services social worker to conduct a drug test, home study, and investigation into the allegations. (*Id.*).  After a few days, and some efforts by Plaintiff to obtain more information about the allegations, Holly returned to conduct the home study with Ms. Martin.  (*Id.* at ¶ 17–18 (also alleging Holly informed the court that Plaintiff was not returning her calls to schedule the home study and drug test)).

Because Plaintiff was not present at the home visit, he went to the PJFS office separately to take a drug test and discuss the "child neglect allegations."  (*Id.*).  While there, he asked to speak to a supervisor, Mikki Vinkovich, to express concerns about the "fabricated facts provided by" Holly about Plaintiff's children.  (*Id.* at ¶¶ 18–19).  Vinkovich told Plaintiff that Holly was "afraid" to come to his home because of his and Holly's prior phone conversation.  (*Id.* at ¶¶ 20–21). Plaintiff "refused to [accept]" Vinkovich's explanation.  (*Id.*).

Plaintiff alleges it took six months for anything else to happen.  (*Id.* at ¶ 22).  During this time, he says he was "never provided a show [cause] hearing with 72 hours or 14 days after his

rights were terminated." (*Id.*).  And, despite several complaints Plaintiff filed with Director Tatman, PJFS "refused to investigate" the child neglect allegations.  (*Id.* at ¶ 25).  Ultimately, though, the court allowed Plaintiff access to his children and visits.  (*Id.*).  Plaintiff says in total, he was "deprived of access to his children for approximately 6 months before his rights were restored." (*Id.*).  Plaintiff also alleges his health suffered because of the stress of his children being removed and "the fear of losing his rights" due to Defendants' actions.  (*Id.* at ¶¶ 23–24 (stating Plaintiff was hospitalized due to a stroke, medicated for depression, and continues to experience trouble sleeping and headaches)).

Plaintiff brings claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1985.  (*Id.* at ¶¶ 26–58).  He also asks for injunctive relief, declaratory relief, and damages.  (*Id.* at ¶¶ 59–65).

## II.  SCREENING STANDARD

Because Plaintiff is proceeding *in forma pauperis*, the Court must dismiss the Complaint, or any portion of it, that is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).  Courts also "understand § 1915(e)(2) to include screening for lack of subject matter jurisdiction." *Howard v. Good Samaritan Hosp.*, No. 1:21-cv-160, 2022 WL 92462, at *2 (S.D. Ohio Jan. 10, 2022).  Indeed, courts must consider whether they have subject matter jurisdiction and may raise jurisdictional issues *sua sponte.  Klepsky v. United Parcel Serv., Inc.*, 489 F.3d 264, 268 (6th Cir. 2007).  If a court finds that it lacks subject matter jurisdiction, it must dismiss the case.  Fed. R. Civ. P. 12(h)(3).

Otherwise, complaints by *pro se* litigants are to be construed liberally and held to less stringent standards than those prepared by attorneys.  *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004).  Nonetheless, "basic pleading essentials" are still required.  *Wells v. Brown*, 891 F.2d

591, 594 (6th Cir. 1989). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and providing "the grounds for the court's jurisdiction." Fed. R. Civ. P. 8(a)(1), (2); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (saying a complaint must have enough facts to give the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests" (internal quotation omitted)).

At this stage, the Court must construe Plaintiff's Complaint in his favor, accept all well-pleaded factual allegations as true, and evaluate whether it contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. But the Court does not have "to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At bottom, a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## III. SCREENING OF THE COMPLAINT

Up front, the Undersigned notes that Plaintiff's complaint is inundated with legal jargon, and many of his claims overlap. Still, the Undersigned addresses each.

### A. Defendants Hendrick and PJFS – Children Services Division

As an initial matter, two Defendants should be dismissed because Plaintiff fails to state a claim against them.

First, despite listing Elisabeth Henrick as a party to this action (Doc. 6-1 at ¶ 8), Plaintiff does not reference her in his statement of the facts. (*See generally id.*). The only place Plaintiff mentions her again is when he alleges Defendants Vinkovich and Tatman should be held liable as supervisors for her unspecified actions. (*Id.* at ¶¶ 52, 53, 56). But this is not enough to give Defendant Henrick fair notice of what Plaintiff's claims are against her or the grounds upon which

those claims rest.  *See Twombly*, 550 U.S. at 555 (citing Fed. R. Civ. P. 8(a)(2)).  For this reason, the Undersigned **RECOMMENDS** Elisabeth Henrick be **DISMISSED** from this action.

Second, Plaintiff names PJFS's Children Services Division as another party to this action. (Doc. 6-1 at ¶ 7).  The Children Services Division, as a department or agency of Pickaway County, is not *sui juris* and cannot be sued in its own right.  *See Curry v. Fed. Gov't*, No. 1:24-CV-299, 2024 WL 2988884, at *3 (S.D. Ohio June 14, 2024) ("Under Ohio law, neither a county nor its department of job and family services is an entity capable of being sued." (citing *Lowe v. Hamilton Cnty. Dep't of Job & Fam. Servs.*, No. 1:05-cv-117, 2008 WL 816669, at *2 (S.D. Ohio Mar. 26, 2008))), *report and recommendation adopted*, No. 1:24-CV-299, 2024 WL 3273467 (S.D. Ohio July 2, 2024); *Loper v. Cuyahoga Cnty. Child. & Fam. Servs.*, No. 1:18 CV 1598, 2019 WL 1597552 (N.D. Ohio Apr. 15, 2019) (collecting cases).  Nor does Plaintiff allege liability under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), against the Children Services Division.  (Doc. 6-1 at 10 (alleging a *Monell* claim against "County of Pickaway and Does 1 through 50" only)); *cf. Curry*, 2024 WL 2988884, at *3.  Therefore, the Undersigned also **RECOMMENDS** that Pickaway County Department of Jobs & Family Services – Children Services Division be **DISMISSED**.

### B.    Procedural Due Process

Turning now to Plaintiff's other claims, he states that "all Defendants" violated his procedural due process rights.  Up front, the Undersigned notes that this claim presents an example of a "group pleading" which is "a litigation tactic which raises claims against numerous defendants without regard to the actions of a particular defendant."  *Hokenson v. City of Lansing*, No. 1:24-CV-601, 2025 WL 725230 (W.D. Mich. Jan. 24, 2025), *report and recommendation adopted*, No. 1:24-CV-601, 2025 WL 722243 (W.D. Mich. Mar. 6, 2025).  Courts hold a group pleading which

5

"lump all defendants together" and "does not sufficiently allege who did what to whom" fails to state a claim upon which relief may be granted. *Id.* (quoting *Courser v. Mich. House of Representatives*, 404 F. Supp. 3d 1125, 1140 (W.D. Mich. 2019)). Because Plaintiff is *pro se* and the Court is bound to construe Plaintiff's allegations generously, the Undersigned will consider the sufficiency of these allegations against Defendants Vinkovich, Holly, and Tatman. (*See* Doc. ¶ 39 (requesting punitive damages under this claim for the actions of these Defendants)).

"[P]rocedural due process principles protect persons from deficient procedures that lead to the deprivation of cognizable liberty interests." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 729 (6th Cir. 2011). "[D]ue process requires that when a State seeks to terminate an interest . . . it must afford 'notice and opportunity for hearing appropriate to the nature of the case' before the termination becomes effective." *Bell v. Burson*, 402 U.S. 535, 542 (1971) (citation omitted). To properly allege a procedural due process Section § 1983 claim, plaintiffs must allege three things: "that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment (2) that they were deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest." *Cooperrider v. Woods*, 127 F.4th 1019 (6th Cir. 2025) (quoting *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999))(citation modified).

This portion of Plaintiff's complaint is saturated with legalese. As best the Undersigned can tell, Plaintiff alleges the relevant interest is his "liberty interest[], including [his] right to raise, be part of, and maintain a family." (Doc. 6-1 at ¶ 36). He says that his rights were deprived without "a full, fair, and adequate investigation" and enumerates several ways he believes his due

process rights were violated, including when "Defendants" introduced false testimony at judicial proceedings and ignored certain evidence. (*Id.* at ¶¶ 36–37).

Ultimately, Plaintiff's allegations do not successfully assert a procedural due process claim. "[T]he Due Process Clause does not require a particular kind of investigation[.]" *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 657 (S.D. Ohio 2016) (citation omitted). Rather "[d]ue process provides, not a guarantee of a perfect investigation, but notice and an opportunity to be heard by a neutral decisionmaker." *Id.* (citing *Kolley v. Adult Protective Servs.*, 725 F.3d 581, 586–87 (6th Cir. 2013)). In other words, "[t]he procedural-due-process analysis focuses on the decision-maker, not the investigator." *Id.* (dismissing a procedural due process claim because alleged bias in an investigation did not implicate due process concerns of notice and opportunity to be heard by a neutral decisionmaker); *cf. Pittman*, 640 F.3d at 729–30 (holding a plaintiff's procedural due process claim failed when he alleged a social worker deprived him notice and opportunity to be heard, but the juvenile court was the ultimate decisionmaker).

Because Plaintiff's allegations do not implicate the due process concerns of notice and opportunity, and because he fails to allege Vinkovich, Holly, or Tatman "had ultimate decisionmaking power with respect to placement or custody," *Pittman*, 640 F.3d at 729, Plaintiff fails to state a claim upon which relief may be granted. The Undersigned **RECOMMENDS** this claim be dismissed.

### C. Substantive Due Process

In a similar vein, Plaintiff alleges "all individual Defendants" violated his substantive due process rights. (Doc. 6-1 at 14). Specifically at issue are his rights to "familial association" and to "not be subject to false accusations on the basis of false evidence that was deliberately fabricated by the government . . . ." (*Id.* at ¶ 40). Plaintiff alleges Defendants violated these rights by

7

"unlawfully removing [his children] from the custody and care of their father and continuing to keep them separate . . . despite their knowledge that [the children] were removed an[d] separated based on Defendants' lies, suppressions[,] and fabrications." (*Id.* at ¶ 41; *see also id.* at ¶¶ 40, 43).

"The Fourteenth Amendment's substantive due process protections guard against 'governmental deprivations of life, liberty, or property . . . regardless of the adequacy of the procedures employed.'" *Chambers v. Sanders*, 63 F.4th 1092, 1096 (6th Cir. 2023) (citation omitted). "Substantive due process claims may be loosely divided into two categories: (1) deprivations of a particular constitutional guarantee; and (2) actions that 'shock the conscience.'" *Pittman*, 640 F.3d at 728 (citation omitted). Plaintiff's familial association claim "deals with the first type of deprivation—deprivation of a constitutional guarantee, particularly the right to the maintenance of a parent-child relationship." *Kolley v. Adult Protective Servs.*, 725 F.3d 581, 585 (6th Cir. 2013).

There is some tension in the caselaw relevant to Plaintiff's Complaint. The Sixth Circuit had held that a social worker cannot be liable for violating a plaintiff's substantive due process rights for "making an initial determination" as to placement of a child that is then brought before and recommended to the juvenile court. *Pittman*, 640 F.3d at 729. This is because under Ohio law, the juvenile court "has the ultimate decisionmaking power with respect to placement and custody, [so] it alone could deprive [a plaintiff] of his fundamental right [to family integrity]." *Id.* Under this precedent alone, Plaintiff could not state a claim against any named Defendant because the state court had ultimate decision-making power in the custody or visitation decision at issue.

But the Sixth Circuit seemingly created a limited exception as to a social worker's investigatory conduct: "a government investigation of child abuse will not automatically implicate the right to familial association . . . absent 'evidence of bad faith, improper motive, or investigation

tactics that 'shock the conscience.'" *Kolley*, 725 F.3d at 585 (quoting *Teets v. Cuyahoga Cnty.*, 460 Fed.Appx. 498, 502 (6th Cir. 2012)).  In other words, while "it is generally true that only the court that ordered a child removed from custody can deprive a parent of the right to familial association, there is an exception for when the court order is based on a bad-faith child-services investigation." *Heithcock v. Tennessee Dep't of Children's Servs.*, No. 15-6236, 2016 WL 11786416, at *4 (6th Cir. Oct. 4, 2016) (applying the exception to a social worker who allegedly engaged in "improper investigatory tactics"); *but see J.A.L. v. Howard*, No. CV 5:22-130-DCR, 2022 WL 5016788 (E.D. Ky. Oct. 4, 2022) (declining to apply the exception to a physician's child abuse investigation when her report was supported by some evidence even though the conclusion was erroneous).

Given this precedent, and without the benefit of a response from Defendants, Plaintiff plausibly alleges Defendant Holly's investigatory conduct falls into this exception.  In other words, construing Plaintiff's Complaint liberally, as the law requires the Undersigned to do, Plaintiff's Complaint could be read as asserting Holly engaged in a bad-faith child services investigation that formed the basis for the court order suspending Plaintiff's "rights to access [] his children."  (Doc. 6-1 at ¶¶ 13–18).  For this reason, the Undersigned will allow this claim to proceed for further development.

Plaintiff sufficiently states this claim as to Defendant Holly only.  Of the other individual Defendants, Tatman and Vinkovich, Plaintiff says nothing about their participation in the investigation itself.  Though Plaintiff separately states Vinkovich helped "effectuat[e]" the "scheme," and claims neither she nor Tatman acted when he complained about the investigation, without more specific factual allegations, these statements are better classified as allegations of supervisory liability, which the Undersigned addressees below.

Therefore, the Undersigned **RECOMMENDS** Plaintiff's substantive due process claim based on his right to familial association be **DISMISSED** as to Defendants Tatman and Vinkovich. But as to Defendant Holly's investigatory conduct, this claim may proceed. But, Plaintiff is **WARNED** that "[t]he court has not made a determination on the merits of [Plaintiff's] claim[] or potential defenses thereto, nor [is] Defendant[] precluded from filing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Wiley v. Austin*, No. 8:20-cv-220, 2020 WL 6204382, at *3 (D. Neb. Oct. 22, 2020).

Finally, considering Plaintiff's claim that his right to "not be subject to false accusations on the basis of false evidence that was deliberately fabricated by the government" was violated, it is not clear to the Undersigned what established substantive due process right Plaintiff references. (Doc. 6-1 at ¶ 43). Therefore, to the extent this claim is distinct from his familial association claim, the Undersigned **RECOMMENDS** it be **DISMISSED** for failure to state a claim.

### D.  Supervisory Liability

Plaintiff also alleges a "supervisory liability for Constitutional violations" claim against Defendants Vinkovich and Tatman. (Doc. 6-1 at 16–17). The Undersigned considers Vinkovich and Tatman's supervisory liability only within the confines of Plaintiff's proceeding substantive due process claim detailed above. *See Griffith v. Franklin Cnty.*, 975 F.3d 554, 579 (6th Cir. 2020) ("[A] plaintiff cannot establish a claim for supervisory liability without establishing an underlying constitutional violation by a supervised employee.").

This Court has been clear that "[t]he scope of supervisory liability in § 1983 cases is limited." *Assi v. Hanshaw*, 625 F. Supp. 3d 722, 747 (S.D. Ohio 2022). "An official cannot be held liable for the constitutional violations of subordinates under a theory of respondeat superior, meaning that she 'cannot be held liable simply because . . . she was charged with overseeing'

subordinate officers who violated the plaintiff's constitutional rights." *Venema v. West*, 133 F.4th 625, 633 (6th Cir. 2025) (quoting *Peatross v. City of Memphis*, 818 F.3d 233 (6th Cir. 2016)). The plaintiff must allege "some active unconstitutional behavior on the part of the supervisor . . . that is directly correlated with the plaintiff's injury." *Id.* (citation modified). "[A]t a minimum, the plaintiff must show that the defendant at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct" of their employees. *Peatross*, 818 F.3d at 242 (citation omitted). Supervisory liability "will not attach for 'a mere failure to act.'" *Crawford v. Tilley*, 15 F.4th 752, 761 (6th Cir. 2021) (citation omitted).

Here, Plaintiff ties very few of his factual allegations to either Vinkovich or Tatman. Beginning with Tatman, Plaintiff merely alleges that he "made several complaints to director Tatman concerning [Plaintiff's] child neglect allegations, domestic violence and how PJFS Child Protective services Decision has repeatedly refused to investigate claims . . . ." (Doc. 6-1 at ¶ 25). These allegations alone do not allow the Undersigned to infer that Tatman implicitly authorized, approved, or knowingly acquiesced to the specific unconstitutional actions Plaintiff alleges that Holly took. And Plaintiff's statements that Tatman was "aware of specific instances" of unconstitutional conduct or otherwise "approved and/or acquiesced" of the same when "violations were brought to [his] attention" are legal conclusions masquerading as facts. (Doc. 6-1 at ¶¶ 52–54); *see Twombly*, 550 U.S. at 555 ("[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation'" (citation omitted)). For this reason, the Undersigned **RECOMMENDS** that Plaintiff's supervisory liability claim against Defendant Tatman be **DISMISSED** for failure to state a claim.

Of Vinkovich, Plaintiff alleges that he met with her once to discuss concerns about case worker Holly's investigation and the false representations Holly made to the juvenile court. (Doc.

6-1 at ¶¶ 19–21).  Based on these conversations, Plaintiff says that Vinkovich was "aware" of constitutional rights violations and "retaliation" committed by her employees; and she "approved and/or acquiesced" to the same "by failing to take appropriate action when violations were brought to [her] attention," such as investigating the alleged violations or disciplining her employees. (Doc. 6-1 at ¶¶ 51–58).  Ultimately though, these allegations amount to Vinkovich failing to act on Plaintiff's complaints of alleged unconstitutional conduct.  Under Sixth Circuit precedent, this is insufficient.  *Cf. Poe v. Haydon*, 853 F.2d 418 (6th Cir. 1988) ("At best, [plaintiff] has merely claimed that the appellants were aware of alleged harassment, but did not take appropriate action. This is insufficient to impose liability on supervisory personnel under § 1983"); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (finding supervisory liability did not extend when a plaintiff reported retaliatory behavior, but supervisory officials denied the grievance).  As stated previously, liability does not extend to a supervisor simply for failing to act.  *Crawford*, 15 F.4th at 761.

Even considering Plaintiff's claim that Vinkovich "participated in the commission of constitutional and statutory rights violations" against him, he fails to describe any facts of participation.  (*See* Doc. 6-1 at ¶¶ 18–20 (merely describing Plaintiff's conversations with Vinkovich)).  He again alleges legal conclusions, not facts.

For these reasons, the Undersigned also **RECOMMENDS** that Plaintiff's claims against Vinkovich based on supervisory liability be **DISMISSED**.

### E.    42 U.S.C. § 1985

Relatedly, Plaintiff alleges that both Vinkovich and Tatman engaged in a conspiracy to interfere with his rights in violation of 42 U.S.C. § 1985.  (Doc. 6-1 at 16).  Though he does not specify, the Undersigned construes Plaintiff's Complaint as alleging a claim under the third subsection of that statute, which applies "if two or more persons . . . conspire . . . for the purpose

of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ." 42 U.S.C. § 1985(3). This claim fails for several reasons.

Once again, Plaintiff's allegations are conclusory. He alleges Vinkovich and Tatman engaged in various behaviors such as approving of, acquiescing to, failing to conduct investigations of, failing to discipline employees for, and participating in "the commission of constitutional and statutory rights violations." (Doc. 6-1 at ¶¶ 54, 55). He fails to provide more factual specificity to support these assertions.

As important, the Supreme Court has held that a violation of Section 1985(3) requires an allegation of "some racial, or otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 834 (1983) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). Plaintiff has alleged no such animus.

Even more, this claim is barred by the "intracorporate conspiracy doctrine, which provides that where 'all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy.'" *Amadasu v. Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008) (quoting *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 510 (6th Cir. 1991)) (citation modified). Here, Vinkovich and Tatman—as well as Holly—were employed by and acted as members of the same entity. Nothing in Plaintiff's Complaint allows the Undersigned to presume otherwise.

For these reasons, the Undersigned **RECOMMENDS** Plaintiff's conspiracy claim under 42 U.S.C. § 1985 be **DISMISSED** for failure to state a claim.

### F.     Municipal Liability

The Court next considers Plaintiff's allegations against Pickaway County.  Specifically, Plaintiff alleges that the County "established and/or followed policies, procedures, customs, usages and/or practice . . . [which] were the moving force behind the violations of plaintiff's constitutional rights . . . including those arising under the Fourth and Fourteenth Amendments to the United States Constitution[.]"  (Doc. 6-1 at ¶ 27).  Plaintiff then lists nine subpoints that he says are examples of "policies, practices, customs and/or procedures" which contributed to violations of his rights including:

a. the custom of separating and/or removing children from their family and homes without exigent circumstances (imminent danger of serious physical injury), court order and/or consent;

b. the custom of removing children from their family and their homes without first obtaining a warrant or court order when no exigency exists;

c. the custom of searching and administering drug test without exigency, need, or proper court order, and without probable cause and/or consent of the Plaintiff;

d. The custom of removing and separating children, and continuing to separate them for an unreasonable period after any alleged basis for separation or removal is negated;

e. The custom of using trickery, duress, fabrication and/or false testimony and/or evidence, and in failing to disclose exculpatory evidence, in preparing and presenting reports and court documents to the court, causing an interference with the Plaintiff's rights, including those as to familial relations; and

f. By acting with deliberate indifference in implementing a policy of inadequate training, and/or by failing to train its officers, agents, employees and state actors, in providing the constitutional protections guaranteed to individuals, including those under the fourth and Fourteenth Amendments, when performing actions related to child abuse and dependency type proceedings;

g. By acting with deliberate indifference in implementing a policy of inadequate supervision, and/or by failing to adequately supervise its officers, agents, employees and state actors, in providing the constitutional protections guaranteed to individuals, including those under the Fourth and Fourteenth amendments, when performing actions related to child abuse and dependency type proceedings;

h. The policy of making false allegations in a Juvenile Custody/Dependency Petitions, i.e. alleging that a parent has failed to protect a child under Ohio welfare Code, where there is no evidentiary basis to support the charge. Such a similar practice by Pickaway County has been enjoined by court order all with deliberate indifference to the rights of the accused parent and the affected child.

> With regard to this particular practice, Plaintiff alleges on information and belief that the conduct of Defendants in this case is not "isolated incident". Rather, it is a well-established custom, practice, and usage of the agency and its workers of which the County has knowledge yet has deliberately failed to ameliorate the problem through the promulgation of policies to regulate the conduct of its social workers. Moreover, the County has failed to implement training and oversight for its workers to prevent them from engaging in such unconstitutional conduct.
>
> i. Refusing to investigate or report child abuse and/or child neglect allegations by a biological parent who hasn't established custody or proof through the courts that the biological parents had any rights to the subject child.

(*Id.*). Taken together, Plaintiff alleges municipal liability under Section 1983—commonly known as a *Monell* claim. 436 U.S. 658.

"To state a municipal-liability claim under § 1983, the plaintiff must allege the deprivation (1) of a right secured by the Constitution or laws of the United States, (2) that was directly caused by a municipal policy or custom." *Nichols v. Wayne Cnty.*, 822 F. App'x 445, 448 (6th Cir. 2020) (citation omitted). "A plaintiff may prove an unconstitutional 'policy' or 'custom' by demonstrating one of the following: '(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.'" *Cline v. Wiedimen*, No. 2:21-CV-112, 2021 WL 123006 (S.D. Ohio Jan. 13, 2021) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)), *report and recommendation adopted*, No. 21CV-112, 2021 WL 391724 (S.D. Ohio Feb. 4, 2021).

Here, Plaintiff alleges he suffered deprivations of the Fourth[1] and Fourteenth Amendments.

---

[1] It is doubtful whether Plaintiff successfully alleges he was deprived his Fourth Amendment rights. For instance, Plaintiff mentions his right to be free from unreasonable searches and seizures, but he does not separately allege a Fourth Amendment claim against any Defendant. (*See generally* Doc. 6-1). In the context of his *Monell* claim, he speaks of a "custom" of searching and administering drug tests without a court order or consent. (*Id.* at ¶ 27(c)). But he never alleges specific facts of such a search or seizure. (*See id.* at ¶¶ 13 (stating Defendant Holly was denied access to Plaintiff's house), 16 (stating a court order instructed social workers to conduct a drug test and home study), 18

(Doc. 6-1 at ¶ 27).  Considering Plaintiff's nine specified "policies, practices, customs and/or procedures," he seemingly invokes three possible theories of municipal liability under *Monell* and its progeny: failure-to-train and supervise; illegal official policies; and custom of tolerance.  (Doc. 6-1 at ¶¶ 26–31)).

> a.  *Failure to Train and Supervise*

To begin, Plaintiff alleges the County failed to train its employees to provide constitutional protections, or supervise them for the same, "when performing actions related to child abuse and dependency type proceedings."  (Doc. 6-1 at ¶ 27 (f)–(g); *see also id.* at ¶ 29).

A municipality's inadequate training amounts to Section 1983 liability only "when it evinces deliberate indifference for the rights of those with whom the governmental employees have contact, such that the inadequate training may be fairly said to represent the government's policy or custom." *Brown v. Cuyahoga Cnty.*, 517 F. App'x 431, 436 (6th Cir. 2013*)* (citing *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989)).  Deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quotation omitted).  A plaintiff can meet this "stringent standard" in two ways.  *Id.*  Either she must allege (1) "evidence of prior instances of unconstitutional conduct demonstrating that the municipality had notice that the training was deficient and likely to cause injury but ignored it," or (2) "evidence of a single violation . . . accompanied by a showing that the municipality had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation."  *Okolo v. Metro Gov't of Nashville*, 892 F.Supp.2d 931, 942 (M.D. Tenn. 2012) (cleaned up) (quoting *Harvey v. Campbell Cnty.*, 453 F. App'x 557, 562–63 (6th Cir. 2011)); *see also id.* at 943 ("Liability for

---

(stating Holly entered Plaintiff's home pursuant to the court order, and Plaintiff agreed to take a drug test)).  However, because Plaintiff's *Monell* claim fails for other reasons, the Undersigned need not go into the particulars.

unconstitutionally inadequate supervision or discipline is treated, for all intents and purposes, as a failure to train."); *cf. Harvey*. 453 F. App'x at 563 ("[M]ere allegations that an officer was improperly trained or that an injury could have been avoided with better training are insufficient to make out deliberate indifference."); *Sweat v. Butler*, 90 F. Supp. 3d 773, 782–82 (W.D. Tenn. 2015) ("[T]he allegation of one instance of faulty supervision, without more, is insufficient to state a plausible claim that inadequate supervision 'can justifiably be said to represent city policy.'" (citation omitted)).

Plaintiff has not alleged evidence of prior instances of unconstitutional conduct that would demonstrate the County was on notice that its training or supervision was deficient and likely to cause injury.  Nor has he pled that that the County failed to train its employees to handle recurring situations presenting an obvious potential for such a violation.  *Cf. Weaver v. Louisville-Jefferson Cnty. Metro Gov't*, No. 3:24-CV-103-RGJ, 2024 WL 2819556, at *3 (W.D. Ky. June 3, 2024) (considering allegations of a federal rights violation coupled with news articles and a report detailing a police department's "shortcomings" related to investigatory searches and unreasonable use of force as adequate to state a failure to train claim).  At base, Plaintiff fails to even specify facts pertaining to global training or supervision of County employees that permit the Undersigned to infer that any constitutional deprivation he experienced was related to inadequate training or supervision.  His conclusory allegations do little more than recite the elements of this claim.  (*See* Doc. 6-1 at ¶¶ 26–30).  For these reasons, this claim must fail.

### b.   *Illegal Official Policies*

The Undersigned next turns to the polices Plaintiff alleges led to his constitutional rights violations.  Reading Plaintiff's Complaint generously, he expressly alleges two official policies: the "policy of making false allegations in a Juvenile Custody/Dependency Petitions" and the policy

of "[r]efusing to investigate or report child abuse and/or child neglect allegations" if it comes from a noncustodial parent.  (Doc. 6-1 at ¶ 27(h)–(i)).  Yet Plaintiff also alleges various "customs" the County follows.  (*Id.* at ¶ (a)–(g)).  To the extent these latter portions of Plaintiff's Complaint could be construed as alleging *Monell* liability for a custom of tolerance or acquiescence of federal rights violations, those allegations are considered below.  But to the extent they could be read as alleging further official illegal policies, the Undersigned also considers them here.

The term "'official policy' often refers to formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–82 (1986).  Even accepting Plaintiff's allegations of his treatment at the hands of County employees as true, he fails to allege facts that allow the Undersigned to infer that the County had the "formal" or "fixed" policies as alleged.  Indeed, he fails to allege facts supporting the existence of any policy at all.  *See Lipman v. Budish*, 974 F.3d 726, 748 (6th Cir. 2020) (noting a policy is "created through the official acts of the municipality's ultimate decision makers") (citation omitted); *cf. Campbell v. Hamilton Cnty.*, No. 1:22CV315, 2023 WL 6295803, at *8 (S.D. Ohio Sept. 27, 2023) (dismissing a similar claim where a plaintiff alleged a county had an policy of using "unconstitutional measures" such as fabricating evidence without more supporting factual allegations); *Sistrunk v. City of Hillview*, 545 F. Supp. 3d 493 (W.D. Ky. 2021) (noting that even where a complaint named a city's alleged constitutional failing a "policy," it did not allege facts supporting the existence of a policy).

At base, Plaintiff's conclusory assertions merely allege that the constitutional deprivations he claims he suffered were due to the County's policies.  *Cf. Grandizio v. Smith*, No. CIV. 14-3868 RBK/KMW, 2015 WL 58403, at *6 (D.N.J. Jan. 5, 2015) (stating a plaintiff "may not simply

include a *Monell* claim in his Complaint as a matter of course by making the conclusory allegation that the alleged constitutional deprivations were due to a policy or custom of the Borough. Rather, Plaintiff must allege some actual facts suggesting as much").  Without more, Plaintiff fails to successfully state this claim.

### c.    Custom of Tolerance

The Undersigned also considers Plaintiff's claim against the backdrop of custom of tolerance *Monell* liability.  (Doc. 6-1 at ¶¶ 27 (naming several "customs"), 29 (alleging the County allowed its employees to engage in unconstitutional conduct)).

For Plaintiff to allege *Monell* liability based on the existence of a custom of tolerance or acquiescence of federal rights violations, he must allege "(1) a 'clear and persistent pattern' of misconduct, (2) notice or constructive notice on the part of the municipality, (3) the defendant's tacit approval of the misconduct, and (4) a direct causal link to the violations."  *Nouri v. Cnty. of Oakland*, 615 F. App'x 291, 296 (6th Cir. 2015) (citation omitted).  Plaintiff's claim does not even make it past this first elemental hurdle.  That is, Plaintiff makes no attempt set forth facts to suggest a pattern of misconduct.  Though at one point he states, "on information and belief . . . the conduct of Defendants in this case is not [an] 'isolated incident,'" (Doc. 6-1 at ¶ 27(h)), he offers nothing more.  Such an allegation is the key to pleading a custom-based claim.  *Franklin v. Franklin Cnty.*, 115 F.4th 461, 472 (6th Cir. 2024) (saying the crux of this type of *Monell* claim is a showing of "particularized" similarities between the prior incidents and the instant case).  Plaintiff's own experiences are not enough.  *Cf. id.*  ("[T]his court has observed that a plaintiff 'cannot rely solely on a single instance to prove the existence of an unconstitutional custom.'" (citation omitted)).  What's more, he has not alleged factual support that the County had notice of any pattern of misconduct, that it tacitly approved of the misconduct, or any causal link to the constitutional

violations now he claims.

At base, while Plaintiff need not provide "detailed factual allegations" at this stage, he must state "well-pleaded factual allegations" that plausibly show Defendant has a custom of ignoring similar constitutional violations.  *Twombly*, 550 U.S. at 555–56; *see also Burgess*, 735 F.3d at 478 ("[A] custom . . . claim requires a showing that there was a pattern of . . . similar claims.").  Because he has not, Plaintiff should not be allowed to proceed on this theory of *Monell* liability either.

As a final note, to the extent Plaintiff attempts to bring constitutional claims other than his *Monell* claim against Pickaway County, he cannot do so.  *See Bruce v. City of Miamisburg*, No. 3:21-CV-00080, 2021 WL 4480918 (S.D. Ohio Sept. 30, 2021) (noting under Ohio law a county is not *sui juris* unless the plaintiff seeks to hold the county liable under Section 1983 for a *Monell* claim).

For these reasons, the Undersigned **RECOMMENDS** Plaintiff's claims against the County of Pickaway be **DISMISSED** for failure to state a claim.

### G. Declaratory Relief

Plaintiff final claim is for "declaratory relief" in the form of an order directing the County of Pickaway to "promulgate policies and implement training to prohibit its social workers from" engaging in various behaviors.  (*See* Doc. 6-1 at ¶ 65).  But because the Undersigned recommends that Plaintiff's claims against the County should be dismissed, to the extent this ask can be construed as a separate claim, the Undersigned **RECOMMENDS** that it, too, should be **DISMISSED**.

### H.    Motion to Appoint Counsel

The Court lastly considers Plaintiff's Motion for Appointment of Counsel (Doc. 2).  As grounds, Plaintiff contends that he cannot afford counsel to assist him.  (*Id.*).  He further offers the complexity of this matter and the interests of justice as support.  (*Id.*).

Though the Court has the statutory authority under 28 U.S.C. § 1915(e) to appoint counsel in a civil case, appointment of counsel is not a constitutional right.  *Lavado v. Keohane,* 992 F.2d 601, 605–06 (6th Cir. 1993) (internal quotation omitted).  Rather, "it is a privilege that is justified only by exceptional circumstances."  *Id.* at 606.  After considering the circumstances here, the Court finds that the appointment of counsel is not warranted at this time.  Generally, a motion to appoint counsel is appropriate after a complaint survives motions to dismiss and motions for summary judgment.  The Court also makes every effort to appoint counsel in cases that proceed to trial.  Since this case is in its very earliest stages, Plaintiff's request is premature.

The Court acknowledges that Plaintiff faces challenges in litigating his case.  But Congress has not provided funds to compensate lawyers who represent indigent plaintiffs in cases like these.  And there are not enough lawyers who can absorb the costs of representing such individuals to allow the Court to appoint counsel to all who request them.  The Court will reconsider requests for appointment of counsel if this case proceeds past motions for summary judgment.  For now, Plaintiff's Motion (Doc. 2) is **DENIED without prejudice.**

Finally, Plaintiff is advised that the Southern District of Ohio's Guide for *Pro Se* Litigants can provide information and resources he might find useful in litigating this case.  That handbook can be found at the following link: https://www.ohsd.uscourts.gov/pro-se-handbook.

## I.       Service

Because the Court is allowing Plaintiff's substantive due process claim against Defendant Holly to proceed for further development, the next step is serving her with the Complaint.  To facilitate this, Plaintiff is **ORDERED** to complete and file a summons form and a U.S. Marshal 285 form for Defendant Holly.  Plaintiff also must file a service copy of his Complaint.  Plaintiff must do so **within ten (10) days**.  Plaintiff is **WARNED** that if he fails to do so, his case could be dismissed for failure to prosecute.  Once he has completed these tasks, the Court will order service.

For more information on service of process, Plaintiff is advised to consult the *Pro Se* Handbook (linked above) at pages 9–11.

## IV.       CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion to Proceed *in forma pauperis* (Doc. 6) and **DENIES as moot** Plaintiff's previous motions seeking the same (Docs. 1, 4).  The Court additionally **DENIES without prejudice** Plaintiff's Motion to Appoint Counsel. (Doc. 2).

The Undersigned **RECOMMENDS** that the Court **DISMISS** Plaintiff's claims except for his substantive due process claim based on familial association against Defendant Holly.  Plaintiff is **ORDERED** to complete and submit to the Court summons and U.S. Marshal forms for Defendant Holly, as well as a service copy of the Complaint, **within ten (10) days of the date of this Order**.


Date: July 18, 2025                                     /s/ Kimberly A. Jolson
                                                       KIMBERLY A. JOLSON
                                                       UNITED STATES MAGISTRATE JUDGE

**<u>Procedure on Objections</u>**

Under Federal Rule of Civil Procedure 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended by the Court on a timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).