**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LORENZO ALLEN THOMAS,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:25-cv-00570** |
| | : | |
| **v.** | : | **Judge Algenon L. Marbley** |
| | : | |
| **PICKAWAY COUNTY, et al.,** | : | **Magistrate Judge Kimberly A. Jolson** |
| | : | |
| **Defendants.** | : | |

**OPINION & ORDER**

This matter is before the Court on the Pickaway Defendants' Motion for Judgment on the Pleadings. (ECF No. 55). For the reasons set forth below, the Motion is **GRANTED.** Plaintiff's claims as specified herein are **DISMISSED WITH PREJUDICE**. Additionally, Plaintiff's Motions for Oral Argument (ECF No. 57), Leave to File Sur-Reply (63), and Protective Order and Sanctions (ECF No. 67) are **DENIED**.

## I. BACKGROUND

On May 21, 2025, Plaintiff initiated this action by filing a pro se Complaint. (ECF No. 1), raising issues related to a child custody petition in the Pickaway County Court of Common Pleas Juvenile Court, a subsequent investigation, and the deprivation of Plaintiff's parental visitation rights. (*Id.*). Plaintiff initially brought suit against Pickaway County ("the County"), Pickaway County Department of Jobs and Family Services – Children Protective Services Division ("PJFS-CPS"), and various PJFS-CPS employees. (*Id.*). After an initial screen of Plaintiff's Complaint, Magistrate Judge Jolson construed the Complaint as alleging various violations of 42 U.S.C. § 1983, and recommended dismissal of all claims except a substantive due process claim against

social worker Amy Holly. (ECF No. 8). Later developments revealed that neither the County nor PJFS-CPS employed or had ever employed anyone by the name of Amy Holly. (ECF No. 34 at 2).

Plaintiff asked the Court if he could amend his Complaint, stating that he had learned the Defendant's correct name and would correct the factual error in the filing. (ECF No. 24). Plaintiff attached the would-be Amended Complaint to the motion, though the amended version still mentioned Amy Holly. (ECF Nos. 24-1 at 7). Plaintiff was granted leave to amend, along with the warning that he must correct the names of the wrongly identified Defendants and file a clean copy of his First Amended Complaint within one week. (ECF No. 27).

The next day, Plaintiff sought leave to amend again and attached a Second Amended Complaint (ECF No. 31) that was "substantially different from his First Amended Complaint." (ECF No. 34 at 2). Plaintiff disagreed with the characterization that his Second Amended Complaint was "substantially different," and asserted that it arose from "new developments" in the Defendants' Answer. (ECF No. 38 at 3). He further contended that the newer version of the Complaint added factual details and made corrections to support Plaintiff's claims better. (ECF Nos. 30 at 1; 34 at 3).

Considering this history, Magistrate Judge Jolson issued an Order retracting her July 18 Report and Recommendation. (ECF No. 34). The Order additionally denied as moot Plaintiff's Motion to Strike Objection and for Leave to File Amended Objection (ECF No. 16), granted Plaintiff's Motion to Amend (ECF No. 30), and directed Plaintiff to file his Second Amended Complaint within seven (7) days.[1] (ECF No. 34 at 7–8). Plaintiff then filed his Second Amended

[1] This Court affirmed the Magistrate Judge's Order on December 2, 2025. (ECF No. 48).

Complaint (ECF No. 39) on November 17, 2025, which is now the operative complaint and at issue in this current Motion.

### A. Plaintiff's Operative Second Amended Complaint

In May 2023, Plaintiff filed a custody petition in the Pickaway County Juvenile Court seeking residential custody of his two minor children. (ECF No. 39 at 5). On September 19, 2023, the Magistrate Judge in the Pickaway County Juvenile Court case named Noella Greeno, the children's mother, legal guardian of the children, and granted Plaintiff limited visitation. (ECF No. 47-1). Plaintiff alleges that during the underlying custody dispute, he contacted Defendant Tatman, Director of PJFS-CPS, to report prior uninvestigated claims of child neglect by Greeno. (ECF No. 39 at 5). Instead of investigating Greeno, however, Plaintiff contends that PJFS-CPS began investigating Plaintiff. (*Id.*). On the other hand, the Pickaway Defendants contend that on September 20, 2023, there was a referral call made to PJFS-CPS which requested that an investigation be conducted on the residences of both Plaintiff Thomas as well as Noella Greeno. (ECF No. 47 at 2).

On September 21, 2023, caseworkers Haley Hedrick and Lance Wood conducted a drug screening and home study with Greeno, observing the minor children in her care. (*Id.*; ECF No. 39 at 5). That same day, caseworker Hedrick tried to conduct a home study and drug screening with Plaintiff Thomas, but he was not home. (*Id.*). Plaintiff's girlfriend, Amanda Martin, refused Hedrick entry, and she left. (ECF No. 39 at 5). The next day, Hedrick attempted to conduct a home study, but Plaintiff again was not home. (ECF No. 47 at 2). Then, on September 25, 2023, Plaintiff, Hedrick, and Hedrick's supervisor, Amy Hoar, had a phone call in which Hedrick and Hoar discussed the requirements of the Magistrate Judge's Order with Plaintiff and explained the need for a home study. (ECF Nos. 39 at 6; 47 at 3). According to Hedrick and Hoar, Plaintiff was

uncooperative and yelled during the call. (ECF No. 55 at 4). Plaintiff alleges that he questioned their authority to enter his home and asserted his constitutional rights. (ECF No. 39 at 6). Following the call, Hoar and Hedrick informed the Magistrate Judge of the call with Plaintiff Thomas and that he refused to cooperate for a home study. (ECF No. 47-2 at 4). As a result, the Magistrate Judge issued a Court Order, which ordered PJFS-CPS to investigate the circumstances surrounding the minor children, specifically requiring home studies and drug screenings of all adults at the residences of both Plaintiff Thomas and Greeno. (ECF No. 47-3).

On September 26, 2023, Hedrick and Hoar contacted Plaintiff Thomas to inform him of the new Court Order. (ECF No. 47-2 at 5). Plaintiff again refused to cooperate, which led to the Hedrick and Hoar reporting Thomas's continued non-compliance to the Magistrate Judge. (*Id.* at 6). As a result, the Magistrate Judge issued another Order, which suspended Plaintiff's visitation rights with the minor children until further order of the court, and scheduled a hearing on the matter for November 20, 2023. (ECF No. 47-4). Caseworker Hedrick subsequently delivered the Magistrate's Order to Amanda Martin at Plaintiff's home because he was not present. (ECF No. 47-2 at 6). Additionally, Hoar followed up by sending Plaintiff a letter detailing what the Magistrate Judge's Order required of him and attached the new court documents. (*Id.*).

Ultimately, on October 27, 2023, PJFS-CPS provided the Magistrate with a report on the investigation into both Greeno and Plaintiff Thomas, which detailed Plaintiff's lack of cooperation. (ECF No. 47–5). Finally, on November 6, 2023, PJFS-CPS closed the case citing that the agency made multiple attempts to work with Plaintiff Thomas and Martin to no avail, and that the Magistrate Judge had cancelled their visitation. (ECF No. 47-2 at 9).

Plaintiff Thomas contends that the Pickaway Defendants fabricated Plaintiff's non-compliance with the court-ordered investigation, drug screening, and home study. (ECF No. 39 at

6–8). Plaintiff further alleges that he made a visit to the Juvenile Court and informed the Magistrate Judge that he was willing to comply with the Court Order. (*Id.* at 8). As a result, Hedrick returned to the home and conducted a home study and drug screening with only Martin because Plaintiff was absent again. (*Id.*). Later that same day, Plaintiff went separately to the PJFS-CPS office for a drug screening. (*Id.* at 8–9). While there, he asked to speak to a supervisor, Mikki Vinkovich, to express concerns about the investigation conducted by Hedrick and her allegations that the agency was unable to contact Plaintiff. (*Id.* at 9). Vinkovich allegedly told Plaintiff that Hedrick likely felt threatened because of his and Hedrick's prior phone conversation. (*Id.*). But Plaintiff rejected Vinkovich's explanation. (*Id.*). Despite such, Vinkovich informed Plaintiff she would look into the matter. (*Id.*). Ultimately, though, after six months, and a status hearing, the court allowed Plaintiff access to his children and restored his visitation rights. (*Id.* at 10). And in 2025, Plaintiff was awarded full residential custody. (*Id.*).

Plaintiff now alleges in his Operative Second Amended Complaint that he was "denied a prompt show [cause] hearing within 72 hours or 14 days of the suspension" of his parental rights. (*Id.*). Plaintiff further contends that Defendants Tatman, Vinkovich, and Hoar, as supervisors, failed to train and oversee subordinates throughout the investigation. (*Id.*). Plaintiff also alleges that he suffered severe emotional and physical harm such as constant fear, insomnia, headaches, depression, and a stroke requiring hospitalization due to Defendants' actions. (*Id.*). As a result, Plaintiff brings four causes of action in his Second Amended Complaint. First, Plaintiff alleges a *Monell* claim against Pickaway County and PJFS-CPS. (*Id.* at 11). Second, Plaintiff alleges procedural due process violations against "[a]ll Individual Defendants." (*Id.*). Third, Plaintiff alleges substantive due process violations against "[a]ll Individual Defendants." (*Id.* at 12). And

finally, Plaintiff alleges supervisory liability claims against Defendants Vinkovich, Hoar, and Tatman. (*Id.*). He also asks for injunctive relief, declaratory relief, and damages. (*Id.* at 13).

On December 5, 2025, the Pickaway Defendants filed the current Motion for Judgment on the Pleadings. 9ECF No. 55). This matter is now fully briefed and ripe for this Court's review.

## II. STANDARD OF REVIEW

### A. Motion for Leave to File Sur-Reply

Generally, sur-replies are "highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on a matter." *Liberty Legal Found. v. Nat'l Democratic Party of the USA, Inc.*, 875 F. Supp. 2d 791, 797 (W.D. Tenn. 2012) (citation omitted). Further, the Federal Rules of Civil Procedure do not contemplate the filing of sur-replies. This Court's Local Civil Rules permit additional memoranda only "upon leave of court for good cause shown." S.D. Ohio Civ. R. 7.2(a)(2). While the Rules do not define good cause, the Sixth Circuit has noted that additional filings "may be allowed in the appropriate circumstances, especially '[w]hen new submissions and/or arguments are included in a reply brief, and a non-movant's ability to respond to the new evidence has been vitiated.'" *Key v. Shelby Cnty*., 551 F. App'x 262, 265 (6th Cir. 2014) (quoting *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003)). Even so, courts in the Southern District have permitted parties to file sur-replies without showing good cause when it did not result in prejudice toward the opposing party. *See Nat'l City Bank v. Aronson*, 474 F. Supp. 2d 925, 930 (S.D. Ohio 2007).

### B. Motion for Judgment on the Pleadings

A party may move for judgment on the pleadings after the pleadings are closed but early enough not to delay trial. FED. R. CIV. P. 12(c). The standard applicable to a motion for judgment on the pleadings is the same as that which applies to a motion to dismiss made under Federal Rule

of Civil Procedure 12(b)(6). *E.g.*, *Jackson v. City of Cleveland*, 925 F.3d 793, 806 (6th Cir. 2019) (citing *Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010)). The Court must construe the complaint in a light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and determine whether the complaint states a plausible claim for relief. *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (citations omitted). The plaintiff must "provide the grounds for its entitlement to relief" and plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citations and internal quotation marks omitted). The Court, however, "'need not accept as true legal conclusions or unwarranted factual inferences.'" *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012) (quoting *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006)).

In general, where a Rule 12(c) motion presents matters outside the pleadings and not excluded by the court, the motion must be treated as one for summary judgment. FED. R. CIV. P. 12(d). The motion is not converted to one for summary judgment, however, where the Court considers "'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[] . . . .'" *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)); *see also Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007) ("A court may consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment.") (citations omitted). Additionally, the Court may consider "exhibits attached to a motion for judgment on the pleadings 'so long as they are referred to in the Complaint and are central to the claims contained therein.'" *Roe v. Amazon.com*, 170 F. Supp. 3d 1028, 1032 (S.D. Ohio 2016), *aff'd*, 714 F. App'x 565 (6th Cir. 2017) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir.2008)).

Documents filed by pro se litigants must be "'liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal citations omitted)). Courts need not, however, "abrogate basic pleading essentials in *pro se* suits." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (citations omitted).

## III. LAW & ANALYSIS

### A. Plaintiff's Motion for Leave to File a Sur-Reply[2]

In support of his Motion for Leave to File a Sur-Reply, Plaintiff Thomas asserts that good cause exists because the Pickaway Defendants' Reply "ambushes Plaintiff with entirely new arguments, misleading characterizations, and previously uncited authorities." (ECF No. 63). Specifically, Plaintiff contends that the Reply introduces previously uncited authorities such as *Arsan v. Keller*, 784 F. App'x 900 (6th Cir. 2019) and *Teets v. Cuyahoga Cnty.*, 460 F. App'x 498 (6th Cir. 2012), despite both cases being clearly cited in the Defendants' initial brief. (*See* ECF No. 55 at 12, 19). Additionally, Plaintiff Thomas contends that the Reply brief raises "new arguments" but fails to specify clearly what these new arguments are and merely attempts to regurgitate his own arguments. This Court finds that the Pickaway Defendants did not assert any new arguments not already raised. As such, allowing a sur-reply would not be of service to this Court and would only allow Plaintiff Thomas to get the last word. *See Spitzer Autoworld Akron,*

[2] Plaintiff also requests that this Court allow oral argument on the Defendants' Motion for Judgment on the Pleadings citing that "the issues involve intricate factual disputes, evolving legal precedents, and potential conversion to summary judgment." (ECF No. 57). Local Civil Rule 7.1(b)(2) provides for oral argument where it "is deemed to be essential to the fair resolution of the case because of its public importance or the complexity of the factual or legal issues presented." S.D. Ohio Civ. Rule 7.1(b)(2). Notably, however, the Rule "leaves the Court with discretion whether to grant a request for oral argument." *Whitescarver v. Sabin Robbins Paper Co.*, 2006 WL 2128929, at *2, (S.D. Ohio July 27, 2006). This Court has reviewed the Parties' briefs and finds that oral argument is not necessary.

*LLC v. FCA US LLC*, 2023 WL 4842669, at *1 (N.D. Ohio Feb. 8, 2023). Accordingly, Plaintiff's Motion for Leave to File Sur-Reply (ECF No. 63) is **DENIED**.

### B. Claims Against Pickaway County and Pickaway County Jobs & Family Services - Child Protective Services Division

Plaintiff alleges Monell claims against the Pickaway County and PJFS-CPS contending that the County and the agency maintained policies, customs, and practices that deprived Plaintiff of his parental rights in violation of his Fourth and Fourteenth Amendment rights. (ECF No. 39 at 11). In response, the Pickaway Defendants contend that Plaintiff's claims against Pickaway County and PJFS-CPS must fail because these Defendants are *non sui juris*. (ECF No. 55 at 5). Under Ohio law, counties, and county agencies cannot be sued as both are *non sui juris* and instead must be held accountable via their elected representatives, namely the board of commissioners. *Lowe v. Hamilton Cnty. Dep't of Job & Fam. Servs.*, 2008 WL 816669, at *2 (S.D. Ohio Mar. 26, 2008) (citing Fed. R. Civ. P. 17(b); *McGuire v. Ameritech Servs., Inc.,* 253 F. Supp. 2d 988, 1015 (S.D. Ohio 2003)); *see also Curry v. Fed. Gov't*, 2024 WL 2988884, at *3 (S.D. Ohio June 14, 2024) ("Under Ohio law, neither a county nor its department of job and family services is an entity capable of being sued.").

Plaintiff's assertion that Pickaway County and PJFS-CPS are *sui juris* is misguided. Plaintiff relies on *Howlett v. Rose*, 496 U.S. 356, 375 (1990), to argue that "§ 1983 claims preempt state immunity doctrines where they conflict with federal rights." (ECF No. 57 at 8). Notably, however, Plaintiff conflates immunity with capacity which are distinct concepts. *Fleenor v. Ottawa Cnty.*, 2022-Ohio-3581, ¶12 ( reasoning that "[a]n unchartered county is merely 'an arm * * * of the State without the capacity of being sued as a separate entity'" and that "suability and liability are not

interchangeable concepts….”). Thus, Plaintiff's contention that Franklin County is *sui juris* is without merit.

Additionally, Plaintiff fails to allege a proper *Monell* claim against the Pickaway County and PJFS-CPS Defendants. To state a proper *Monell* claim, a plaintiff must demonstrate that the county maintained a custom or policy that caused the alleged constitutional deprivation. *Monell v. New York City Department of Soc. Services,* 436 U.S. 658, 694 (1978). “A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.” *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

Here, Plaintiff identifies no official policy that caused the alleged constitutional violations. *See Katsigianis v. Mahoning Cnty.*, 2025 WL 948030, at *5 (N.D. Ohio Mar. 28, 2025) (finding no *Monell* liability where the plaintiff only stated in a conclusory fashion that the constitutional violations were the result of official policies, practices, or customs but failed to specify a policy). Nor does Plaintiff point to a single act by a decisionmaker with respect to the alleged violations. Plaintiff does, however, allege that Defendants Tatman, Vinkovich, and Hoar failed to supervise, train, or discipline subordinates. To the extent that Plaintiff Thomas attempts to plead failure-to-train *Monell* claim against Pickaway County or PJFS-CPS, his pleadings are insufficient.

“‘A municipality's culpability for a deprivation of rights is at its most tenuous[,]’ however, ‘where a claim turns on a failure to train’ and requires a showing of deliberate indifference on the part of the municipality.” *Vo v. Ohio Dep't of Job & Fam. Servs.*, 2022 WL 794677, at *4 (S.D.

Ohio Mar. 16, 2022) (quoting *Connick v. Thompson,* 563 U.S. 51, 61 (2011)). Plaintiff Thomas makes no allegations regarding the training that Pickaway County or PJFS-CPS employees receive, nor does he allege that either Defendant was on notice of any training inadequacies and failed to act. *See Woodall v. Wayne Cnty.*, 590 F. Supp. 3d 988, 1010 (E.D. Mich. 2022) (quoting *Jackson v. City of Cleveland*, 925 F.3d 793, 834 (6th Cir. 2019) ("To show that the County is liable under *Monell* based on a failure-to-train claim, Plaintiffs 'must establish that: 1) the [County's] training program was inadequate for the tasks that officers must perform; 2) the inadequacy was the result of the [County's] deliberate indifference; and 3) the inadequacy was closely related to or actually caused the injury.'"). Here, Plaintiff fails to demonstrate any other instances of impermissible investigative tactics or inadequate training other than what he alleges happened in his case, which is insufficient to state a failure-to-train *Monell* claim. *Thomas v. City of Chattanooga*, 398 F.3d 426, 433 (6th Cir. 2005) ( "[A] plaintiff bears a heavy burden in proving municipal liability, and he cannot rely solely on a single instance to infer a policy of deliberate indifference."). Accordingly, Plaintiff Thomas cannot prove *Monell* liability against the Pickaway County or PJFS-CPS where he merely makes conclusory pleadings regarding the failure-to-train claim. *Vo*, 2022 WL 794677, at *4 (denying a failure to train claim where plaintiff included no factual basis for such a claim).

Additionally, Plaintiff conclusorily alleges that the Pickaway County and PJFS-CPS Defendants have a pattern of: "(a) separating families without exigent circumstances or proper warrants; (b) relying on unverified anonymous tips; (c) fabricating or exaggerating evidence in affidavits and referrals; (d) conducting inadequate or biased investigations (e.g., selective visits/enforcement); ignoring reports of neglect by custodial parents while targeting non-custodial ones; and (f) failing to provide timely due process hearings." (ECF No 39 at 11). Such conclusory

pleadings fail to demonstrate any facts supporting that the Defendants maintained a custom that caused Plaintiff's alleged deprivation. *Burgess*, 735 F.3d at 478 ("[A] custom . . . claim requires a showing that there was a pattern of . . . similar claims."); *Grandizio v. Smith*, 2015 WL 58403, at *6 (D. N. J. Jan. 5, 2015) (reasoning that a plaintiff "may not simply include a *Monell* claim in his Complaint as a matter of course by making the conclusory allegation that the alleged constitutional deprivations were due to a policy or custom of the Borough. Rather, Plaintiff must allege some actual facts suggesting as much."). As such, Plaintiff fails to satisfy the elements of a proper *Monell* claim. Accordingly, all claims alleged against the Pickaway County and PJFS-CPS Defendants are **DISMISSED with prejudice**.

### C. Procedural Due Process

Plaintiff also argues that "all Individual Defendants" violated his procedural due process rights. (ECF No. 39 at 11). He further specifies that by "demanding warrantless entry without exigency[,] submitting a false affidavit to obtain the ex parte suspension[,] failing to conduct or document the court-ordered investigation[,] lying to the court about contact attempts[,] and denying a timely show cause hearing[,]" the Defendants violated his clearly established rights. (*Id.*).

"[P]rocedural due process principles protect persons from deficient procedures that lead to the deprivation of cognizable liberty interests." *Bartell v. Lohiser,* 215 F.3d 550, 557 (6th Cir. 2000) (citing *Mathews v. Eldridge,* 424 U.S. 319, 333–34 (1976)). In order to state a procedural due process claim, "a plaintiff must demonstrate the following three elements: (1) plaintiff has 'a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment,' (2) plaintiff was 'deprived of this protected interest within the meaning of the Due Process Clause,' and (3) defendant did not afford plaintiff 'adequate procedural rights' prior to the

deprivation." *Home Loan Sav. Bank v. City of Coshocton*, 2023 WL 423512, at *2 (S.D. Ohio Jan. 26, 2023) (quoting *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999)).

As a threshold matter, this Court finds that Plaintiff's procedural due process claims are deficient because Plaintiff engages in "group pleading" and fails to identify which Defendant engaged in which unlawful conduct through sufficient allegations referencing each Defendants individual conduct. *Jefferson v. Fenech*, 2020 WL 7353517, at *4 (E.D. Mich. Dec. 15, 2020) ("[I]n the Sixth Circuit, grouping all defendants together collectively and providing no factual basis to distinguish each defendants' conduct does not satisfy the *Twombly*/*Iqbal* fair notice pleading standard.") (citing *Marcilis v. Twp. Of Redford*, 693 F.3d 589, 596–97 (6th Cir. 2012)).

Even if this Court were to consider the sufficiency of the allegations against each individual defendant, Plaintiff still failed to satisfy the elements of a proper procedural due process claim. While this Court construes Plaintiff's allegations to claim a protected interest in his right to "familial association," Plaintiff fails to demonstrate how he was deprived of this interest without adequate procedural rights by any of the Individual Defendants. Plaintiff's claims arise out of the Pickaway Defendants investigation into Plaintiff pursuant to Court orders issued by the Magistrate Judge in the underlying custody action. The Second Amended Complaint makes clear that on multiple occasions PJFS-CPS employees went to Plaintiff's home and attempted to conduct a home study and drug screening as ordered by the Magistrate Judge. Yet, on multiple occasions, Plaintiff was absent, refused PJFS-CPS entry to the home, or questioned the authority of PJFS-CPS. As a result of the inability to track Plaintiff down and carry out the Magistrate Judge's requests, Plaintiff lost his visitation rights. Plaintiff's pleadings make clear that only after his non-compliance with the Court Orders were his rights terminated.

Additionally, such pleadings fail to demonstrate any deprivation of his procedural rights before the termination of Plaintiff's visitation rights at the hands of the Individual Defendants. Despite Plaintiff's contentions that Hedricks and Hoar fabricated or misconstrued details about his non-compliance in the investigation, such is insufficient to attach liability to Hoar or Hedrick. "Due process provides, not a guarantee of a perfect investigation, but notice and an opportunity to be heard by a neutral decisionmaker." *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 657 (S.D. Ohio 2016) (citing *Kolley v. Adult Protective Servs*., 725 F.3d 581, 586–87 (6th Cir. 2013)). Thus, "[t]he procedural-due-process analysis focuses on the decision-maker, not the investigator." *Id.* Therefore, the focus must be on the Juvenile Court, who made the ultimate decision regarding Plaintiff's visitation rights. Further, given that Plaintiff was entitled to propose a change to his visitation rights at any time pursuant to Ohio Rev. Code Ann. § 2151.412(D), there was not a violation by the Pickaway Defendants of Plaintiff's procedural due process rights. *See Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 730 (6th Cir. 2011) (finding no deprivation of plaintiff's procedural due process rights by the case social worker where the juvenile court was the ultimate decision maker and bore the responsibility of providing adequate custody proceedings); *see also Keller*, 2018 WL 635894, at *6 (S.D. Ohio Jan. 31, 2018), *report and recommendation adopted,* 2018 WL 3933706 (S.D. Ohio Aug. 16, 2018) (reasoning that the individual defendants (county children's services employees) had no independent ability to deprive the plaintiff of her children). Thus, Plaintiff's procedural due process claim is **DISMISSED**.

### D. Substantive Due Process

Plaintiff also alleges that all "Individual Defendants" violated his substantive due process rights by interfering with "Plaintiff's fundamental right to familial association under the Fourteenth Amendment through deliberate fabrication of evidence" and "retaliation for exercising

Fourth Amendment rights." (ECF No. 39 at 12). Plaintiff also contends that the conduct of the Individual Defendants "shocks the conscience." (*Id.*). There are two types of substantive due process claims a plaintiff may allege: "(1) deprivations of a particular constitutional guarantee; and (2) actions that 'shock the conscience.'" *Pittman*, 640 F.3d at 728 (citation omitted). Plaintiff's familial association claim "deals with the first type of deprivation—deprivation of a constitutional guarantee, particularly the right to the maintenance of a parent-child relationship." *Kolley*, 725 F.3d at 585.

The "government may not deprive individuals of fundamental rights unless the action is necessary and animated by a compelling purpose." *Bartell v. Lohiser*, 215 F.3d 550, 557–58 (6th Cir. 2000) (citing *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997)). Here, however, as addressed above regarding Plaintiff's procedural due process claim, a children's services social worker cannot independently deprive a parent of his fundamental the right to maintenance of a parent-child relationship where the Juvenile Court is the ultimate decision-maker. *See Pittman*, 640 F.3d at 729. Thus, as a general matter, none of the Pickaway Defendants can be held liable for Plaintiff's loss of visitation rights where the Magistrate Judge made the final decision to terminate visitation. Additionally, the Sixth Circuit has acknowledged that a government investigation into claims of child abuse does not deprive one of the right to familial association. *Teets*, 460 F. App'x at 502 (citation omitted). Even considering that the Sixth Circuit has carved out an exception for circumstances in which there is "evidence of bad faith, improper motive, or investigation tactics that 'shock the conscience[,]'" such circumstances are not present here. (*Id.*).

Plaintiff's group pleadings are conclusory and fail to allege how the Pickaway Defendants fabricated their investigation into Plaintiff. Even considering Plaintiff's more detailed allegations regarding Defendants Hedrick and Wood, such do not rise to bad faith or shock the conscience.

Plaintiff himself admits that he and Amanda Martin refused entry to Hedrick and Wood when they attempted to conduct a home study and drug screening, questioned their authority, and "demanded that [Hedrick] not to continue to harass him and his family" (ECF No. 39 at 5–6). Further, Plaintiff's pleadings make clear that Hedrick and Hoar informed him of the Magistrate Judge's orders requiring the investigation of Plaintiff, yet he still did not cooperate. Thus, the only conduct alleged in Plaintiff's pleadings that could be remotely construed as improper is his allegation that she lied and fabricated evidence regarding his cooperation. Undermining his own claims, however, is Plaintiff's admissions in his pleadings that he did not cooperate, "asserted his rights," and questioned Hedrick's authority. Thus, Plaintiff's pleadings affirm that Hedrick and other Pickaway Defendants attempted to comply with the Juvenile Court Custody Orders yet were unsuccessful due to Plaintiff's absence and non-compliance. *See Pittman*, 640 F.3d at 729–30 (finding no substantive due process claim where plaintiff alleged a social worker fabricated plaintiff's uncooperativeness and reasoning that the deprivation was perpetrated by the juvenile court, not the social worker). Thus, none of the Individual Defendants can be held liable for violating Plaintiff's substantive due process right to familial association. Accordingly, Plaintiff's substantive due process claim is **DISMISSED**.

### E. Supervisory Liability

Finally, Plaintiff alleges supervisory liability claim against Defendants Tatman, Vinkovich, and Hoar for failing to "supervise, train, or discipline subordinates" which led to the alleged deprivations. (ECF No. 39 at 12). To succeed on a supervisory liability claim, a plaintiff must plausibly allege that a supervisory defendant "authorized, approved, or knowingly acquiesced in the unconstitutional conduct ... of his subordinates through the execution of his job functions." *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016). Thus, a supervisory liability claim

cannot be rooted in a theory of *respondeat superior* or a supervisor's failure to act but must allege active involvement by the supervisor in unconstitutional behavior. *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Tillery v. CoreCivic, Inc.*, 2026 WL 1035073, at *8 (M.D. Tenn. Apr. 16, 2026).

As a threshold matter, a supervisory liability claim must fail where there is no underlying constitutional violation. *Tillery*, 2026 WL 1035073, at *3. Because this Court found that Plaintiff has failed to allege a constitutional violation against any of the Individual Defendants, Plaintiff's supervisory liability claim must also fail. Additionally, even if Plaintiff had established an underlying constitutional violation, his claims still fail due to his failure to allege personal involvement in the alleged violations. Defendants Tatman, Vinkovich, and Hoar did not participate in the home visits that he alleged violated his constitutional rights, and as such, these defendants may not be held liable for the conduct of any subordinates during the home visits. Beyond Plaintiff's respondeat superior based pleadings, he merely alleges that Defendant Tatman "initiated actions" against him, that Defendant Hoar explained to him the need for compliance with the Magistrate's Order, and that Defendant Vinkovich informed Plaintiff she would look into his complaints about his PJFS-CPS case. Thus, as pled, Plaintiff did not allege any direct involvement in the alleged constitutional deprivations he faced on behalf of Tatman, Vinkovich, or Hoar. Accordingly, Plaintiff's supervisory liability claim must fail and is **DISMISSED**.

### F. Plaintiff's Motion for Protective Order and Sanctions

In a separate Motion, Plaintiff has moved the court for "an expedited evidentiary hearing (in-person, telephonic, or in chambers), protective order, sanctions, and other relief due to serious litigation misconduct by Defendant Mikki Vinkovich." (ECF No. 67). Specifically, Plaintiff contends that on January 14, 2026, he "received an unsolicited email falsely purporting to be from

a ‘concerned citizen’ requesting access to Plaintiff's evidence in this case.” (*Id.* at 2). Plaintiff contends that he has evidence linking this email to Defendant Vinkovich and that her conduct violates Ohio R. Prof. Cond. 8.4 and 4.4(a). First, Plaintiff fails to provide this Court with evidence of this alleged email. Second, a non-lawyer such as Defendant Vinkovich may not be held liable by the Ohio Rules of Professional Conduct which govern attorneys admitted to practice in Ohio. Finally, Plaintiff cites no authority supporting his entitlement to sanctions, a protective order, or an evidentiary hearing. Accordingly, Plaintiff's Motion for Protective Order and Sanctions is **DENIED**.

## IV. CONCLUSION

For the reasons discussed above, the Motion for Judgment on the Pleadings by the Pickaway Defendants (ECF No. 55) is therefore **GRANTED** and Plaintiff's claims are **DISMISSED WITH PREJUDICE**. Additionally, Plaintiff's Motions for Oral Argument (ECF No. 57), Leave to File Sur-Reply (63), and Protective Order and Sanctions (ECF No. 67) are **DENIED**.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATE: August 11, 2026**